# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: NATIONAL ARBITRATION (PAM/JSM) FORUM TRADE PRACTICES LITIGATION | MDL No. 10-2122 |
| THIS DOCUMENT RELATES TO ALL ACTION | **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT OF SETTLEMENT** |

Plaintiffs Kelly Marquis, Tommi Head, Robert Burgi, Peter Kennedy, Laura Siddons, Anthony Magnone, Randal Kinnunen and Adriane Daniels ("Lead Plaintiffs" or "Plaintiffs"), submit this Memorandum in Support of their Motion for Preliminary Approval of the Stipulation and Agreement of Settlement of the above-captioned class action ("NAF Class Action") with Defendants National Arbitration Forum, Inc., National Arbitration Forum, LLC ("NAF"), Dispute Management Services, d/b/a Forthright (collectively the "NAF Entities"), Accretive, LLC, and its private equity funds, including Defendant Agora Fund I GP, LLC, and Mann Bracken, LLP (collectively "Defendants").

**INTRODUCTION**

In this class action, which began as multiple filings against Defendants consolidated as an MDL proceeding in February 2010, Lead Plaintiffs, on behalf of themselves and thousands of consumers nationwide subject to NAF arbitrations, challenge the neutrality of arbitrations conducted through NAF. Following a year of intense, fast-tracked litigation and nine months of hard-fought settlement negotiations, the parties have reached an agreement to resolve this action.

On April 6, 2011, the Parties entered into a Stipulation and Agreement of Settlement (the "Settlement") of the NAF Class Action, filed with this Court and attached as Exhibit A to the Affidavit of David M. Cialkowski ("Cialkowski Aff."), submitted in support of this motion.   The Settlement offers important benefits to the Settlement Class, providing for permanent injunctions against each of the Defendants in this action: the NAF entities will be enjoined from participating in any new consumer arbitrations and must dismiss such pending actions where not prohibited by procedural rules, Accretive and Agora will be enjoined from investing in any consumer arbitration business for a period of ten years, and Mann Bracken will be enjoined from any future action to collect or enforce any arbitration awards issued by the NAF entities or judgments on such awards.   The Settlement is the result of well-informed and extensive, arm's-length negotiations between

and among highly-experienced counsel, facilitated by well-respected mediators. As a result of this process, the Settlement is fair, reasonable, and adequate and should be preliminarily approved.

Accordingly, pursuant to the Settlement, Plaintiffs request that the Court enter an order:

(1)   granting preliminary approval of the Settlement reached by the Parties;

(2)   certifying, for purposes of settlement only, the Settlement Class specified in the Settlement Agreement, pursuant to Fed. R. Civ. P 23(a) and 23(b)(2);

(3)   approving and appointing the Plaintiffs' Counsel Group as Class Counsel and Lead Plaintiffs as Class Representatives;

(4)   approving the form and method for providing notice of the Settlement to the Class and to the Paid-in-Full Group; and

(5)   scheduling a hearing at which the request for final approval of the proposed Settlement, and entry of the final judgment will be considered.

## SUMMARY OF LITIGATION

### A. Overview of Allegations

Plaintiffs' Second Consolidated Amended Class Action Complaint ("Complaint") alleges that Defendants' practices in arbitrating and collecting on arbitration awards favored creditor banks and lenders. Plaintiffs further allege that Defendant Accretive-Agora's ownership interest in both the NAF Entities and Mann Bracken's parent created a conflict of interest, depriving

consumers of a neutral arbitral forum. Thus, Plaintiffs assert that the Defendants violated the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, the Federal Arbitration Act ("FAA"), the due process clause of the U.S. Constitution, the Minnesota Prevention of Consumer Fraud Act, the Minnesota Unlawful Trade Practices Act, the Minnesota Uniform Deceptive Trade Practices Act, the unfair trade practices and consumer protection laws of all fifty states, and that Defendants' acts or omissions constituted tortious interference with contract, fraud, and negligence under the laws of all fifty states.

## B. Relevant Procedural History

This action began with multiple filings, pending before the Court. On February 3, 2010, the Judicial Panel on Multidistrict Litigation consolidated all pending cases to the Court for pretrial purposes, including the NAF Class Action and certain other lawsuits involving the NAF ("the Tag Along Cases") that involved common questions of fact such that common administration would serve the convenience of the parties and witness and promote the just and efficient conduct of the litigation. The actions that were consolidated are:

| Abbreviated Case Name | Court | Case Number |
|---|---|---|
| *Daniels v. Worldwide Asset Purchasing, LLC, et al.* | M.D. Ala. | 2:09-920 |
| *Pelletier v. Nat'l Arbitration Forum, Inc.,* | M.D. Fla. | 8:09-2229 |

4

| Abbreviated Case Name | Court | Case Number |
|---|---|---|
| *et al.* | | |
| *Sydnes v. Nat'l Arbitration Forum, Inc., et al.* | D. Minn. | 0:09-1939 |
| *Marquis, et al. v. Nat'l Arbitration Forum, Inc., et al.* | D. Minn. | 0:09-1971 |
| *Head v. Nat'l Arbitration Forum, Inc., et al.* | D. Minn. | 0:09-1977 |
| *Burgi v. Nat'l Arbitration Forum, Inc., et al.* | D. Minn. | 0:09-2200 |
| *Wicker, et al. v. Nat'l Arbitration Forum, Inc., et al.* | D. Minn. | 0:09-2508 |
| *Wilder v. Nat'l Arbitration Forum, Inc., et al.* | D. Minn. | 0:09-3168 |
| *Mangone, et al. v. Accretive, et al.* | D. Minn. | 0:09-3722 |
| *Roarig v. Nat'l Arbitration Forum, Inc., et al.* | W.D. Wash. | 3:09-5685 |

The Court approved a leadership structure composed of the Plaintiffs' Lead Counsel Committee on January 4, 2010, consisting of representatives from each of the following firms: Gustafson Gluek, PLLC; Zimmerman Reed; Lockridge Grindal Nauen, PLLP; Lieff Cabraser Heinmann & Bernstein, LLP; RodaNast, PC; Richardson, Patrick, Westbrook & Brickman LLC; Silverman & Fodera, PC; Wiggins, Childs; Quinn & Pantazis, LLP; Wexler Wallace LLP; Devereux Murphy, LLC; and Milberg LLP.  (Docket No. 4).

The Court further ordered that a smaller subcommittee could be created to manage the litigation. *Id*. Plaintiffs filed a Consolidated Amended Complaint on October 13, 2009 and a Second Consolidated Amended Complaint on May 4, 2010. (Docket No. 37).

### C. Discovery

On September 2, 2009, the parties appeared before the Court on Plaintiffs' motions, including a motion for expedited discovery. The Court granted expedited discovery, and set an aggressive schedule for completion of class discovery by April 1, 2010. This deadline was amended; the case was stayed pending the results of mediation efforts.

The discovery activities involved the exchange of interrogatories, the production of hundreds of thousands of documents from the parties, motion practice on various discovery disputes, and depositions of the following individuals: (1) Connell Loftus (Mann Bracken, 30(b)(6) Deponent); (2) Mark Fellows (NAF, 30(b)(6) Deponent); and (3) Daniel T. Legierski (NAF, 30(b)(6) Deponent).

### D. Motion Practice

Defendants filed motions to dismiss on December 30, 2009. On February 22, 2010, the Court denied Defendants motions to dismiss, with the exception of Plaintiffs' due process and tortious interference claims, which were dismissed. (Docket No. 247, Case No. 09-1939). Defendant NAF

appealed this order to the Eighth Circuit Court of Appeals on March 16, 2010, based on the denial of immunity, and moved for a stay of all litigation before the Court. Defendants Accretive and Agora also filed an appeal. The Court denied Defendants' motion for a stay on April 12, 2010. The Eighth Circuit panel denied Defendants' appeal on April 22, 2010, and denied their petition for rehearing *en banc*, and for rehearing by the panel on June 3, 2010. The parties agreed to a voluntary stay of this litigation pending the results of mediation.

### E. The Settlement Negotiations

Counsel for the Parties participated in extensive settlement efforts and mediations on June 16 and August 26 with the Hon. (Ret.) U.S. District Court Judge Fern Smith. Cialkowski Aff., Ex. D at ¶ 2. The parties then continued to mediate with the Hon. (Ret.) U.S. Magistrate Court Judge Edward Infante on October 19, 2010, a mediator with more than 30 years of experience facilitating the resolution of legal disputes. *Id.* at ¶¶ 1-2. The mediation involved extensive written submissions, and followed exchange of mediation discovery. *Id.* at ¶ 3. This session ended with an agreement and settlement in principle, with the parties to address the details of the settlement through the process of drafting a memorandum of understanding (the "MOU"). *Id.* at ¶ 4. However, deep disagreements between the parties over several issues hampered the process. *Id.* at ¶ 5. Thereafter, Judge Infante conducted

numerous caucus-type teleconferences with each side of the various disputes and with all parties to the dispute and further participated in a status conference conducted by Magistrate Judge Janie S. Mayeron, who ordered the parties to provide certain information and present legal positions to the Court, and to the other parties, regarding the issues over which there was disagreement. *Id.* at ¶ 5.  Following the telephonic mediation sessions and the status conference before Judge Mayeron, and because the gaps had still not been overcome, the parties agreed to have Judge Infante conduct another mediation session on February 17, 2011, during which the parties resolved their disagreements and redrafted and signed the final MOU. *Id.* at ¶ 6.

The entire mediation process spanned over nine months, and the parties' efforts were adversarial, with strong opposing views as to the strengths and weaknesses of the parties' positions. *Id.* at ¶ 8.  The proposed Settlement resulted from fully-informed, arms' length negotiations, conducted solely through the mediator, without the slightest hint of collusion. *Id.* at ¶ 9.

## THE TERMS OF THE PROPOSED SETTLEMENT

The settlement provides tremendous benefits to the public and to class members.   Cialkowski Aff., Ex. D at ¶ 11.   The complete terms of the Settlement are set forth in the Settlement Agreement; a summary of the key terms follows.

## A. The Settlement Class

The Parties have agreed to certification under Federal Rule of Civil Procedure 23(b)(2) of a nationwide settlement class.  This settlement class consists of:

> All persons in the United States who were involved in a consumer debt collection dispute in which an arbitration was initiated with an NAF Entity and including persons subject to NAF awards that were discharged in bankruptcy.  Excluded from the Class is any person who properly excludes himself or herself by filing a valid and timely request for exclusion as a member of the Paid-in-Full Group in accordance with the requirements set forth in the Notice.

## B. The Injunctive Relief

The Settlement will provide multi-faceted injunctive relief that will benefit all class members.  The Settlement Agreement provides:

1. NAF will dismiss all currently pending consumer arbitrations where not prohibited by its own rules of procedure.

2. Mann Bracken will cease all collection activity on NAF-sponsored arbitrations.

3. Accretive and Agora will refrain from investing in the consumer arbitration business for a period of ten (10) years.

4. Defendants have also stipulated to a statement of facts detailing their financial relationships, which may be used by class members as they see fit in any collection-related actions brought by non-parties.

The total dollar amount of the consumer arbitration awards issued to claimants represented by Mann Bracken, and its predecessor firms Eskanos

& Adler, P.C., and Wolpoff & Abramson, LLP, during the period October 2001 through July 2009 is at least $3,814,385,000.00. Cialkowski Aff., Ex. A at ¶ 4.2. The total amount of consumer arbitration claims dismissed by NAF since July 2009 is at least $1,090,000,000.00. *Id.* Mann Bracken's agreement to cease its collection activity on the remainder of the debt provides potentially billions of dollars of benefit to class members. Cialkowski Aff., Ex. D at ¶ 11.

### C. Release of Claims

Plaintiffs agree to a release and assign to Defendants all claims and damages that Class Members have against any of the Defendants which any member of the Plaintiff class could pursue in relation to the NAF transactions or that could have been asserted in the NAF Class Action. Cialkowski Aff., Ex. A. at ¶ 5.

### D. Attorney Fees

Defendants shall pay $2,900,000 in attorneys' fees and expenses, including class representative awards. Defendants shall pay an additional $300,000 for the cost of providing notice of the Settlement by publication. *Id.* at ¶ 6.

### E. Notice and Right to Opt Out

The Settlement provides that Notice be distributed to the class. *See* Cialkowski Aff., Exs. B, C. Members of the Paid-in-Full Group, those Class

members who have paid the full amount of all sums awarded against them in a Consumer Arbitration by a NAF entity will receive notice and the right to opt-out of the Settlement.

## ANALYSIS

### A. Standards for Preliminary Approval

Courts strongly favor settlement as a method for resolving litigation. *See Justine Realty v. American Nat. Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992); *Holden v. Burlington Northern Inc.*, 665 F. Supp 1398, 1405 (D. Minn. 1987).  In class action lawsuits such as this, the policy of favoring voluntary resolution of litigation through settlement is particularly strong:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (internal citations omitted); *see also White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993).   Indeed, such agreements should be deemed presumptively valid.  *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[S]trong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Federal Rule of Civil Procedure 23(e) requires judicial approval of the compromise of claims brought on a class basis; the district court acts as a

fiduciary, serving as a guardian of the rights of absent class members. Fed. R. Civ. P. 23(e); *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975). The procedure for review of a proposed class action settlement is a well-established process. *See* Manual for Complex Litigation § 13.14 (4th ed. 2004) (hereinafter "Manual"). First, the Court conducts a preliminary hearing to determine whether the proposed settlement falls "within the range of possible judicial approval." 4 Herbert B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002) (hereinafter "Newberg"). If the district court preliminarily approves the settlement, the class is notified and provided an opportunity to be heard, at a fairness hearing, concerning the merits of the settlement. *Armstrong*, 616 F.2d at 314. Finally, the Court conducts a "formal fairness hearing" or final approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual § 13.14.

The Eighth Circuit has established four factors for determining whether a proposed settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *see also*

*Van Horn v. Trickey,* 840 F.2d 604 (8th Cir. 1988). At the preliminary approval stage, only the first three factors are considered. *In re Wireless Tel.*, 396 F.3d at 932.

A court may also consider procedural fairness to ensure the settlement is not the product of collusion but resulted from arms' length negotiations, including consideration of whether a skilled mediator was involved. *In re Wireless Tel.,* 396 F.3d at 934; *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1178 (8th Cir. 1995).

Here, all factors weigh in favor of granting preliminary approval.

## B. The Settlement Should Be Preliminarily Approved

### 1. The Settlement Benefits Favor Preliminary Approval

The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Petrovic,* 200 F.3d at 1150 (internal quotations omitted); *In re Wireless Tel.*, 396 F.3d at 932-33. The Court "cannot be expected to balance the scales with the nicety of an apothecary. The very object of compromise 'is to avoid the determination of sharply contested and dubious issues.'" *White*, 822 F. Supp. at 1417 (quotation omitted). Thus, the Court's determination generally "will not go beyond 'an amalgam of delicate balancing, gross approximation, and rough justice.'" *Id.* (quotation omitted).

13

Here, the settlement benefits offered weigh in favor of preliminary approval. The Parties had an opportunity, both formally and informally, to obtain discovery of the facts and documents relevant to the lawsuits comprising the consolidated proceedings. The Parties exchanged substantial documentation and information concerning the history, terms and implementation of the ownership structure of the Defendants that is the graveman of the Plaintiffs' claims, including the deposition of the managing partner of Mann Bracken. While Plaintiffs remain convinced that their case is strong on the merits, substantial risk is involved in continued litigation. While all class actions are uncertain in terms of outcome, difficulties of proof and lengthy duration, this action is particularly unusual and thus highly unpredictable in terms of ultimate outcome. *See* Cialkowski Aff., Ex. D at ¶ 3, 7.

Indeed, Defendants have denied and continue to deny any and all fault, wrongdoing, and liability for the claims and damages asserted in the NAF Class Action, and believe that their defenses are meritorious, but have entered into the Settlement because of a recognition and wish to avoid the burden and expense associated with further litigation and the uncertainties associated with trial. Cialkowski Aff., Ex. A at 3.

Judge Infante determined, after reviewing the strengths and weaknesses on both sides, that the Settlement is fair, reasonable and

adequate. Cialkowski Aff., Ex. D at ¶ 10. The Settlement provides that NAF will cease all pending consumer arbitrations. Mann Bracken will abandon all collection efforts on NAF-administered debts, and Accretive/Agora is barred from investments in the consumer arbitration industry for a period of ten years. NAF estimates that the value of cases dismissed since Plaintiffs filed this class action at over $1 billion and Mann Bracken values the debts it is prohibited from collecting at several billion dollars. *Id*. at ¶ 11. Defendants have also stipulated to facts describing their financial relationships, which class members may use as they see fit. *See* Cialkowski Aff., Exs. F, A at 8-9. As Judge Infante concludes, "[t]he settlement provides tremendous benefits to the public and to class members." Cialkowski Aff., Ex. D at ¶ 11.

Given these considerations, preliminary approval is appropriate to avoid the uncertainties of continued litigation and in light of the extraordinary relief afforded to the Settlement Class.

### 2. Defendants' Finances

The financial condition of the Defendants also favors preliminary approval of the Settlement. Since the filing of this lawsuit, former defendant Axiant (in which Defendant Accretive owns a majority share) has filed for bankruptcy and was dismissed from this action. Mann Bracken has been placed in receivership. NAF has ceased conducting consumer arbitrations, a multi-million dollar business that constituted the majority of its operations.

While one or more defendants could possibly pay more, "this fact, standing alone, does not render the settlement inadequate." *Petrovic*, 200 F.3d at 1152. The benefit to the class is substantial and Defendants' financial conditions appear largely precarious. Accordingly, the Court should find that the Defendants' financial condition and ability to pay weighs in favor of approval.

### 3. Complexity and Expense

The complexity and expense of this litigation weighs in favor of preliminary approval. Further litigation would be expensive, complex and time-consuming. The road ahead for this litigation, if it were to continue, includes Lead Plaintiffs' pursuit of class certification, which Defendants would challenge and appeal, if granted. Discovery, which has been bifurcated into class and merits discovery, would continue with dozens of depositions and document production as to each Defendant. Each step forward towards summary judgment and trial would likely be subject to Defendants' vigorous opposition and appeal. Barring settlement, this case would "likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing." *In re Wireless Tel.*, 396 F.3d at 922. The nature of the litigation to date, and the certainty of continued complex and expensive proceedings, counsels in favor of approval. Furthermore, Judge Infante recognized that, based on his experience as both a judge and private

mediator, this litigation is "both novel and complex, involving thousands of debtors—throughout the United States whose debt collection actions were pursued through the National Arbitration Forum—whose underlying debt liability was being brought into question on a class-wide basis." Cialkowski Aff., Ex. D at ¶ 7.

### 4. Arm's Length

The Settlement was achieved after nine months of zealous negotiations by all parties on behalf of their respective clients, and only after multiple settlement proposals were exchanged and rejected. The Parties participated in multiple mediation sessions and engaged in thoughtful and comprehensive briefing. With the guidance and direct involvement of Judges Smith and Infante, the Parties reached a compromise that they agree is reasonable and fair. Courts have held, further, "that there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." *In re Charter Commc'n, Inc. Sec. Litig.,* MDL No. 4:02-CV-1186, 2005 WL 4045741, *5 (E.D. Mo. June 30, 2005). Finally, there is simply no allegation or evidence of collusion between the Parties. As Judge Infante attests, "[t]he mediation efforts were adversarial, with strong opposing views as to the strengths and weaknesses of the parties' positions. . . . The proposed settlement that the parties reached resulted from fully-informed, arms' length negotiations. The parties did not negotiate with one another; the

17

negotiations were through me.  There was not the slightest hint of collusion."
Cialkowski Aff., Ex. D at ¶ 9.

### C. The Proposed Settlement Class Is Appropriate For Certification Under Rule 23(a) and 23(b)(2).

To qualify for certification, an action must satisfy Federal Rule of Civil Procedure 23(a) as well as one of the subdivisions of Rule 23(b).  Fed. R. Civ. P. 23(a), (b).  Rule 23(a) requires the proponents of certification to establish each of the following: (1) that the members of the proposed class are so numerous that joinder of the individual claims would be impracticable; (2) that there is commonality among issues of law or fact raised by the class members; (3) that the claims of the proposed class representatives are typical of the claims of the class members; and (4) that the proposed class representatives will adequately represent the interests of the class. FED. R. CIV. P. 23(a).  In addition, an action may be maintained if,  "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  For the purposes of settlement only, the Parties agree that proper and sufficient grounds exist for a class to be certified under Rule 23(a) and 23(b)(2).

### 1.    Numerosity

Minnesota district courts have determined that putative class sizes of 40 will support a finding of numerosity. *Lockwood Motors, Inc. v. Gen. Motors Corp.,* 162 F.R.D. 569, 574 (D. Minn. 1995). Here, tens of thousands of consumers were parties to arbitrations initiated by the Defendant NAF Entities. *See* Compl. at ¶ 92, Docket No. 37. The proposed Settlement Class is sufficiently numerous for purposes of meeting Rule 23(a)(1).

### 2.    **Commonality**

Common questions exist when there is a "common nucleus of operative facts." *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1031 (D. Minn. 2007) (quoting *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 269 (D. Minn. 2002)). The commonality requirement, moreover, is satisfied "when the legal question linking the class members is substantially related to the resolution of the litigation, even though the individuals may not be identically situated." *Nerland*, 564 F. Supp. 2d at 1531 (citing *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 603 (D. Minn. 2001)). Factual variances among class grievances will not defeat the commonality requirement, so long as the claims arise from a common nucleus of operative facts. *See id.*

Here, the legal question as to whether the Defendants' were structurally organized in a manner that created an undisclosed conflict of interest such that arbitrations were biased in favor of creditors and lenders is

common as to all consumers who were a party to NAF Entity-initiated arbitrations. As such, the commonality requirement is satisfied.

### 3. Typicality

The typicality prerequisite is satisfied "when the claims of the named plaintiffs arise from the same event or are based on the same legal theory as the claims of the class members." *Lockwood Motors,* 162 F.R.D. at 575. "When the claims or defenses of the representatives and the class are based on the same course of conduct or legal theory, it is thought that the representatives will advance the interest of the class members by advancing his or her own interests." *In re Control Data Corp. Sec. Litig.,* 116 F.R.D. 216, 220 (D. Minn. 1986) (citations omitted). Therefore, it has been held that any differences between the class representative and the putative class must be material to the claims and defenses pled—not merely "incidental" to the allegations. *Lockwood,* 162 F.R.D. at 575-76. Accordingly, courts have held that the burden of demonstrating typicality is fairly easily met." *DeBoer*, 64 F.3d at 1174. Plaintiffs' claims are set forth in ¶¶ 8-15 of the Complaint. Each of the Lead Plaintiffs has been subject to a NAF arbitration (but has not paid the award) as follows:

- Robert Burgi: NAF arbitration award in favor of creditor Chase Bank in the amount of $14,483.65.

- Tommi Head: NAF arbitration award in favor of creditor Chase Bank in the amount of $6,277.99.

- Peter Kennedy: NAF arbitration award in favor of creditor Chase Bank in the amount of $30,283.71.

- Anthony Magone: NAF arbitration award of $11,670.77 in favor of creditor.

- Kelly Marquis: Mann Bracken pursued debt to creditor Chase Bank in the amount of $12,194.75. Settlement of debt reached with Mann Bracken.

- Laura Siddons: NAF arbitration award in favor of creditor MBNA in favor of MBNA.

The claims of the proposed settlement class are based on the same theory: that Defendants created a structural conflict of interest in the NAF arbitration system and that NAF Entities conducted a biased arbitration process that favored creditors, to the detriment of consumers. Thus, Plaintiffs rely on the same legal theories as all other proposed Settlement Class members and, therefore, satisfy this typicality requirement.

### 4. Adequacy of Representation

The named representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to meet this requirement, the Court must find that (1) the representatives and their counsel are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to

those of the class such that it is unlikely that their goals and viewpoints will diverge. *See Lockwood*, 162 F.R.D. at 576. Here, the Court needs to look no further than the record to be satisfied that counsel for the Plaintiffs are able and equipped to fully litigate this matter, if necessary. Furthermore, the Court has already determined that the Plaintiffs' Counsel Group are qualified to assist in leading this litigation. Docket No. 4. With respect to Rule 23(a)(4)'s second prong, the representative's interests are sufficiently similar to those of the class, as explained in the Rule 23(a)(3) analysis, *supra*. The adequacy requirement is therefore also met and the Plaintiffs' Counsel Group should be appointed as Class Counsel pursuant to Rule 23(g). *See* Gustafson Aff. at ¶ 3.

### 5. Certification Under Fed. R. Civ. P. 23(b)(2) Is Appropriate

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). The Eighth Circuit has cited with approval the statement that "if the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *DeBoer*, 64 F.3d at 1175 (quoting 7A Charles A. Wright et al., Federal Practice and Procedure § 1775 at 470).

The requirements of Rule 23(b) are "almost automatically satisfied in actions primarily seeking injunctive relief," where, as here, Plaintiffs' suit "seeks to define the relationship between the defendant(s) and the world at large." *Baby Neal for & by Kanter v. Casey,* 43 F.3d 48, 58 (3rd Cir. 1994).

Here, Defendants have acted on grounds generally applicable to the class, making prospective relief appropriate: each customer was subject to the same conflict of interest throughout the class period. The Settlement will enjoin the NAF entities from pursuing pending arbitrations, Mann Bracken from collections of NAF arbitrations, and Accretive and Agora from investment in the arbitration industry for a period of ten years. Thus, this Settlement solely provides for injunctive relief applicable to all class members and Defendants in a common manner and certification under Rule 23(b)(2) is appropriate.

Although the right to opt out of a class settlement is not typically afforded where Rule 23(b)(2) certification is sought, the Settlement provides an opt out opportunity for members of the Paid-in-Full Group. Because the Paid-in-Full Group may have claims for monetary damages only, i.e., such members would benefit only remotely from the injunctions provided, the Settlement contemplates that members of this Group may opt out of the Settlement. Although a class member has no right to opt out of a class certified under Rule 23(b)(2), the district court may mandate such a right

pursuant to its discretionary power.  As the court in *Eubanks v. Billington,* 110 F.3d 87, 94 (D.C. Cir. 1997) states:

> Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions. The rule itself does not expressly preclude opt-outs in non-(b)(3) actions, and the procedural flexibility suggested in subsection (d) is consistent with the view of Professor Moore that within the basic framework of Rule 23, "the supportable range of judicial choice appears quite wide."

*See also Penson v. Terminal Transport Co.*, 634 F.2d 989, 993 (5th Cir. 1981).

## D. The Form and Content of the Notice Should Be Approved

As the Supreme Court explained in *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950), "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* at 314.  In class actions, Rule 23 mandates that reasonable notice be disseminated to all class members whose claims would be released by a proposed settlement.

Although in a Rule 23(b)(2) class, such as this one, notice is not required, *see, e.g., Evans v. Amer. Credit Sys., Inc.*, 222 F.R.D. 388, 397 (D. Neb. 2004), Rule 23(e)(1) provides that, in the settlement context, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." According to the Manual, Rule 23(e)(1)'s mandatory

notice provision applies to all settlement classes, "regardless of whether the class certified under Rule 23(b)(1), (b)(2), or (3)." Manual, § 21.312, at 293.

What constitutes reasonable notice under Rule 23(e)(1) depends on case-specific factors. "Trial courts are . . . afforded considerable discretion in fashioning notice appropriate to the particular circumstances[.]" Newberg § 8.13. Thus, while individual notice is required *where practica*ble in Rule 23(b)(3) actions, notice in a Rule 23(b)(2) class like this one is subject to the court's discretion as to what constitutes "appropriate notice to the class."[1] Rule 23 (c)(2)(A). *See Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 962 (3d Cir. 1983).

Here, Plaintiffs have worked with a claims administrator to fashion a proposed Notice Plan that comports with due process and the specific facts of this case, and that permits the added protection of opt-out rights—neither required nor proscribed in (b)(2) cases, discussed above[2] -- for those Class Members who paid their awards in full.

Specifically, Plaintiffs propose a Media Notice Program focused on a

[1] Even in a Rule 23(b)(3) class, where no reasonable means exist for obtaining class member names and addresses, courts can and do rely on publication notice. Manual §21.311, at 292; *see Hammer v. JP's Southwestern Goods*, 2011 WL 183972, at *4 (W.D. Mo. Jan. 19, 2011).

[2] "Under Rule 23(b)(2), although a class member has no absolute right to opt out of the class, the district court may mandate such a right pursuant to its discretionary power." 7B Fed. Prac. & Proc. § 1793 (3d ed.) (2010), at n. 37; *Evans,* 222 F.R.D. 388 at 397-98 (discussing authority allowing opt-out rights in a (b)(2) case).

target audience of adults 18 years of age and older and a blend of print and online media to reach Class Members. *See* Declaration of Alicia Gehring ("Gehring Decl."), at ¶¶ 9-14. The Program includes one insertion of a quarter-page ad in USA Today, which has a circulation of close to 1.8 million people, and six weeks of rotation on an online ad network delivering 190 million "gross impressions" (the duplicated sum of audiences of all media vehicles containing the notice). The online portion of the Program will be directed toward those adults with any loans, any recent late fees on credit cards, and/or who recently transferred a balance from another card.[3] Finally, the notices themselves are written in plain, easily understood language. Rule 23(c)(2)(B); Cialkowski Aff., Ex. E at ¶ 13. Furthermore, a Web site [www.arbitrationsettlement.com] has been established to provide information regarding the Settlement to potential class members.

To effectuate the above-described Notice Program, Defendants are paying $300,000. As Mediator and Retired Judge Edward Infante explained, he has "stated his belief to the parties that $300,000 will provide sufficient [notice] of this settlement class. . . . particularly because the relief to the class, although substantial in my view, is entirely injunctive" and he has "recently been involved in other cases where the parties agreed to provide

---

[3] The internet ads focus on the following broad-based channels: news/information; weather; health; "women's interest"; finance; travel; and community. *Id.* at ¶ 13.

publication notice in similar circumstances, and in those cases the task was accomplished for less than $300,000." Cialkowski Aff., Ex. D at ¶ 14.

In addition to the fact that this case is (b)(2) settlement with opt-out rights for a limited group and the fact that the relief afforded to the Class is injunctive, another important factor confirming the propriety of the Notice Program is the fact that Plaintiffs do not have access to Class Member identities and addresses. Cialkowski Aff., Ex. D at ¶ 14, Ex. E at ¶ 7. In addition to the cases cited in Footnote 1 above, other courts have similarly endorsed notice by publication alone in a variety of circumstances when it is "impracticable to gain the names and addresses of class members and notify them individually of the action's pendency." *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 59 (D. Conn. 2001).

In many such cases, available lists of potential class members were both over- and under-inclusive, making notice by mail unreasonable under the circumstances. For example, in *In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 534, 546 (N.D. Ga. 1992), the court found that notice by mail was not required because the only list that could be created from the defendants' business records was "not a list of class members," but rather a list of people (all approved users) associated with particular credit card numbers who might or might not have been the actual purchasers of airline tickets, *i.e.*, the actual class members.  *Id.* at 542-44.

27

The court distinguished *Eisen* on the grounds that, there, "the records kept by defendants indisputably contained the universe of class members." *Id*. at 546.

In *Carlough v. Amchem Prods. Inc.*, 158 F.R.D. 314 (E.D. Pa. 1993), the court held that notice by mail was not required, explaining that the proposed method of determining the list of class members "would, after burdensome and expensive efforts, produce at best a list of names and outdated addresses that would represent only a fraction of the class, and that would include many names of non-class members.  It would not be reasonable to mail individual notice packets to these persons, especially in light of the extensive, and probably more effective, notice plan proposed by the parties and described above." *Id*. at 328.  *See also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (Posner, J.) (notice of settlement on website constituted an acceptable substitute for individual notice where defendant lacked records concerning portion of class of customers; "something is better than nothing"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536-537 (3d Cir. 2004) (where class members were consumers of a prescription drug, and names and addresses of those consumers were confidential and not available to the parties, notice by publication in tandem with call center and website constituted sufficient notice); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 476 (N.D. Ill. 2009) ("Plaintiffs' proposal that notice be made by

publication, television and news media, and the Internet is adequate in these circumstances [inadequate sales records] to identify the class members.").

The argument in support of the Notice Plan here is even stronger than in many of the above cases, because there is no list of Class Members at all, let alone one that may be under or overbroad.  Plaintiffs thus submit that the proposed Notice Program in this settlement providing substantial injunctive relief is constitutionally sound and consistent with the requirements of Rule 23.

### E. The Requested Fee Award and Cost Reimbursement Is Fair and Reasonable and Should Be Approved

Pursuant to the Settlement, Plaintiffs seek a combined total of $2,900,000 in attorneys' fees and costs, escrow account costs, and class representative awards.  Cialkowski Aff., Ex. A at ¶ 6.1.  The attorneys' fees and costs sought are far less than Plaintiffs' Counsel's lodestar and reasonable litigation costs associated with these actions.  This amount— which was negotiated only after the basic structure of the Settlement's substantive terms were agreed upon[4]—is supported by both the percentage-of-the-fund and lodestar methods that Eighth Circuit courts use to determine fees and costs in class action cases.  An award of attorneys' fees and costs will

---

[4] Plaintiffs' first demand for fees occurred during the second mediation session on August 27, 2010.  Only after Defendants had agreed to the injunctions against Mann Bracken and Accretive-Agora did Plaintiffs make their opening demand for fees.  Cialkowski Aff. at ¶ 5.

compensate and reimburse Plaintiffs' counsel for the work they have already performed in this case as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, making sure that the settlement is fairly administered and implemented, and obtaining dismissal of the action.  Defendants have agreed to support this request.  *Id.* at ¶ 6.2.

The Court may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Parties to a class action may negotiate not only the settlement itself, but also the payment of attorneys' fees.  *Holden*, 665 F. Supp. 1398.  An award of attorneys' fees is committed to the sound discretion of the district court.  *Petrovic*, 200 F.3d at 1147.  When examining fees and costs, district courts in the Eighth Circuit are guided by the fundamental principle that an award of attorneys' fees need only be reasonable under the circumstances.  *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708 (DWF/AJB), 2008 WL 682174, at *6 (D. Minn. Mar. 7, 2008)

There are two generally-accepted methods of evaluating attorneys' fees: the percentage-of-the-fund method and lodestar.  The method chosen is committed to the Court's discretion.  *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).  By any recognized measure, the attorneys' fees Plaintiffs' Counsel seek here are fair.

First, the requested $2.9 million in attorneys' fees and costs is reasonable under the lodestar method.  The Eighth Circuit has identified four factors in setting a reasonable lodestar fee: (1) number of hours counsel expended; (2) counsel's "reasonable hourly rate"; (3) the contingent nature of success; and (4) the quality of the attorneys' work." *Grunin*, 513 F.2d at 127; *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1159 (D. Minn. 2009).  The fee in this case is reasonable in light of the amount of work done by counsel, the results obtained, the quality of representation, and the complexity and novelty of the issues presented.  *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 993 (D. Minn. 2005); Gustafson Aff. at ¶¶ 6, 9.  Since the commencement of this action, Plaintiffs' Counsel have managed extensive litigation related to the validity of arbitrations performed by NAF.   Plaintiffs' Counsel conducted extensive pre-filing investigations; moved for a preliminary injunction designed to halt the practices at issue; engaged in active discovery litigation, including several motions to compel; successfully opposed three separate, comprehensive motions to dismiss filed by Defendants; successfully opposed Defendants' motions to stay this action pending appeal; successfully opposed Defendants' appeals; monitored Defendant Axiant, LLC's bankruptcy proceedings; and worked with the City of San Francisco and Minnesota Attorney General to coordinate discovery and litigation strategy with related actions.  Gustafson

Aff. at ¶ 6.  In that time, Plaintiffs' counsel have devoted more than 10,500 hours to the investigation, development, litigation, and resolution of the NAF cases.  *See* Gustafson Aff. at ¶ 6.  Plaintiffs' Counsel have an aggregate lodestar of at least $4.4 million.  Counsel will incur additional fees to prosecute these actions through the claims process and final settlement approval.  If the full amount of the fee is paid, Plaintiffs' Counsel will not seek separate compensation for their out-of-pocket costs that currently total over $190,000.  *See* Gustafson Aff. at ¶ 8.

Second, the request is reasonable under the alternative common fund approach given the value of the injunctive relief.  The value of the NAF arbitrations dismissed totaled more than $1 billion and Mann Bracken's agreement to cease its collection activity on $3,814,385,000.00 in consumer arbitration awards provides billions of dollars of benefit to Class members.  Cialkowski Aff., Ex. A at ¶ 4.2, Ex. D at ¶ 11.  The value to class members of this injunctive relief requiring Mann Bracken to cease its collection activities can be readily ascertained and may be calculated as the value of a common fund for purposes of applying the percentage-of-the-fund method of determining fees.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *cf. Johnston*, 83 F.3d at 243 (upholding use of lodestar approach where the value of the injunctive relief was speculative).  The total fee and costs award therefore is reasonable as it represents less than 0.003 percent (0.003%) of

the value of the Class injunctive relief. *Cf. In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 998 (summarizing cases awarding attorney fees ranging from 25% to 36% of a common fund under the percentage-of-the-fund method); *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) (awarding attorneys' fees of $64,785,000 from a common fund of $925.5 million).

Lastly, the requested fees and costs are reasonable under either method because they were negotiated—and are being paid—separately from the Settlement and will thus not diminish the injunctive relief in any way. *See, e.g.*, *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 384 (D.D.C. 2002) (finding that attorneys' fee request was "even more reasonable" because it was "negotiated separately and is independent of the total common fund" and "therefore will not reduce the fund at all if awarded").  In light of NAF's troublesome financial condition, it was even more important for the Parties to reach an agreement on the terms and merits of the underlying Settlement itself before commencing any discussion pertaining to attorneys' fees.  Under the supervision of the Honorable Edward A. Infante, the parties reached an agreement on the basic structure of the settlement before embarking on fee discussions.  *See, e.g.*, *Holden*, 665 F. Supp. at 1427-28. This resulted in a fair attorneys' fee agreement.

### F. The Requested Special Awards for the Named Plaintiffs' Efforts Are Fair and Reasonable and Should Be Approved

Courts may make separate or special awards to class representatives in recognition of their risks, time expended, and benefits to the Class.  *See In re US Bancorp Litig.*, 291 F.3d. 1035, 1037 (8th Cir. 2002); *White*, 822 F. Supp. at 1406 (D. Minn. 1993).  The role of the Named Plaintiffs in this litigation was crucial.  In this case, each Named Plaintiff performed an important and valuable service for the benefit of the Settlement Class.  Gustafson Aff. at ¶ 10.    Each sacrificed time to prosecute this litigation on behalf of the Class. Each met, conferred, and corresponded with Plaintiffs' Counsel as needed for the efficient process of this litigation.   They each have: participated in numerous, lengthy interviews by Plaintiffs' Counsel; assisted in responding to multiple discovery requests, and provided sensitive and personal financial information regarding the consumer arbitrations at the heart of this litigation.   All Named Plaintiffs actively participated in discussions that shaped and finalized the Settlement.  Plaintiffs took these steps even though they bore the risks of counterclaims or collateral attacks to collect on their outstanding arbitration judgments.  *See Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (awarding $15,000 where plaintiffs "bore the risks of counterclaim or collateral attack, and consulted with class counsel throughout the suit").    The valuable efforts of the Named

Plaintiffs, their willingness to litigate and pursue their representative claims, and the strength of their claims, have resulted in a settlement that will benefit all Settlement Class Members.  As with the attorneys' fees and costs, these funds will be paid outside of the Settlement Fund, such that granting awards will have no effect on the Settlement benefits the Class will enjoy as a result of the successful resolution of this litigation.   Under these circumstances, a service award of $3,500.00 to each Plaintiff is certainly reasonable.

## PROPOSED SCHEDULE OF EVENTS

The Parties propose the following schedule of events leading to the final hearing as set forth in the Parties' Preliminary Approval Order attached and submitted herewith:

| Event | Time for Compliance |
|---|---|
| Preliminary Hearing | April 27, 2011 |
| Escrow of Settlement Funds | 20 days after preliminary approval by the Court of the Stipulation and Settlement |
| Publication of Notice | 7 days after Preliminary Approval Order entered |
| Motion in Support of Attorneys' Fees Award | 44 days before the Final Hearing |
| Mailing Deadline for Objections | 30 days before the Final Hearing |
| Mailing Deadline for Requests for Exclusion (Opt-outs") | 30 days before the Final Hearing |

| Presentation of Opt-out list to Defendants' Counsel | 30 days prior to Final Hearing |
| Service and Filing by Class Counsel of Affidavit of Notice Publication | 5 days prior to the Final hearing |
| Final Hearing | Approximately 82 days after preliminary approval |

This schedule is similar to those used in numerous class action settlements and provides due process for Class members with respect to their rights concerning the Settlement.

## CONCLUSION

The Parties have reached this Settlement following extensive discussions and arms'-length negotiations. For all of the above-stated reasons, Lead Plaintiffs request that the Court:

(1)     grant preliminary approval of the Settlement reached by the Parties;

(2)     certify, for purposes of settlement only, the Settlement Class specified in the Settlement Agreement, pursuant to Fed. R. Civ. P 23(a) and 23(b)(2);

(3)     approve and appoint the Plaintiffs' Counsel Group as Class Counsel and Lead Plaintiffs as Class Representatives;

(4)     approve the form and method for providing notice of the Settlement to the Class and to the Paid-in-Full Group; and

(5)     schedule a hearing at which the request for final approval of the proposed Settlement, and entry of the final judgment will be considered.

Dated:  April 13, 2011

<div style="margin-left:50%;">

s/David M. Cialkowski
ZIMMERMAN REED, PLLP
Charles S. Zimmerman
David M. Cialkowski
Kirsten D. Hedberg
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson
Michelle J. Looby
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Elizabeth J. Cabraser
Rachel J. Geman
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, California 94111
Tel: (415) 956-1000
Fax: (415) 956-1008

LOCKRIDGE GRINDAL
NAUEN P.L.L.P.
Robert K. Shelquist
Yvonne M. Flaherty
100 Washington Ave S.
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981

</div>